UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


CIVIL ACTION NO. 3:12-CV-00471-H


U.S. DEPARTMENT OF AGRICULTURE
RURAL HOUSING SERVICE                                                      APPELLANT

V.

KENNETH A. RILEY and                                                        APPELLEES
SHEILA E. RILEY

**MEMORANDUM OPINION AND ORDER**


This matter is before the Court on appeal from a June 7, 2012 Order of Judge Thomas H. Fulton of the United States Bankruptcy Court for the Western District of Kentucky (the "Order"). Appellant, United States Department of Agriculture, Rural Housing Services ("USDA RHS"), seeks review of the Bankruptcy Court's decision granting summary judgment in favor of Appellees, Kenneth A. Riley and Sheila E. Riley (collectively, the "Rileys").

On this appeal, much of the argument focused on whether this Court is bound by its previous decision in *In re Alexander*, 225 B.R. 145 (Bankr. W.D. Ky. 1998), *aff'd*, 245 B.R. 280 (W.D. Ky. 1999), a decision much critiqued in recent years. The Court, after conducting its own *de novo* review, applied a different analytical framework than the *Alexander* Court. For the reasons that follow, the Court reverses the Order and remands the case to the Bankruptcy Court for entry of judgment in favor of USDA RHS consistent with this opinion.


I.

The material facts in this case are undisputed. Prior to bankruptcy, the Rileys were legally obligation to USDA RHS for a deficiency balance arising from the foreclosure of the Rileys' home on which the USDA RHS held a mortgage. The amount still owing was $8,534.84. On May 8, 2010, USDA RHS, for the purpose of obtaining a setoff pursuant to the Treasury Offset Program ("TOP"), certified to the Secretary of the Treasury that this debt was past due. The TOP is a government program that offsets a debtor's positive federal claim, such as a federal tax refund, against delinquent debts owed to federal agencies and states.

On March 25, 2011, the Rileys filed a Chapter 7 Bankruptcy petition. The Rileys listed a tax refund of approximately $1,500.00 in their Schedule B and claimed the refund as exempt in their Schedule C.[1] Additionally, the Rileys listed in their bankruptcy schedules a general unsecured debt owed to the USDA RHS.

After filing the bankruptcy petition, the Rileys filed a joint federal tax return, claiming they were owed $5,140.00. On May 12, 2011, the Trustee, appointed pursuant to the Chapter 7 proceeding, filed a Report of No Distribution. Shortly thereafter, the Rileys received notice that the Treasury had intercepted their tax refund, in the amount of $5,140.00, pursuant to the Treasury offset statute, 26 U.S.C. § 6402. The Treasury offset $5,140.00, held a $17.00 fee and forwarded to USDA RHS $5,123.00. On May 26, 2011, $5,123.00 was credited to the Rileys' outstanding debt to USDA RHS.

The Rileys filed an adversary action against the USDA RHS seeking the return of their federal tax refund that USDA RHS obtained through the TOP in the amount of $5,120.00. The parties filed a joint stipulation of facts and cross-motions for summary judgment.

---

[1] The $1,500.00 represents the Rileys' approximation of their expected tax refund. They did not learn the actual amount of their joint tax refund until two months after their bankruptcy petition was filed.

The Bankruptcy Court granted the Rileys' Motion for Summary Judgment, disallowing the USDA RHS setoff right under 11 U.S.C. § 552.   The USDA RHS filed an appeal to this Court pursuant to 28 U.S.C. § 158(a), primarily arguing that the Bankruptcy Court failed to apply the plain language of the Treasury offset statute, 26 U.S.C. § 6402.  The Rileys counter that a creditor may not exercise the right to setoff against a bankruptcy debtor's exempt property pursuant to 28 U.S.C. § 522 and *In re Alexander*, 225 B.R. 145 (Bankr. W.D.Ky. 1998), *aff'd*, 245 B.R. 280 (W.D. Ky. 1999), a prior decision from this Court.[2]

When reviewing an order of a bankruptcy court under 28 U.S.C. § 158(a), a district court may set aside factual findings only when they are clearly erroneous.  *Nicoholson v. Isaacman (In re Isaacman)*, 26 F.3d 629, 631 (6th Cir. 1994).  However, questions of law are reviewed *de novo*. *Id*. The main question presented here, whether the bankruptcy court erred in applying the Treasury offset statute, and the other issues raised in this appeal, are purely questions of law.  Therefore, this Court will review the Bankruptcy Court's decision *de novo*.

---

[2] In *Alexander*, the court held that exemptions had precedence over setoff rights.  In that case, the IRS sought to setoff a pre-petition debt against an earned income tax credit that became payable to the debtor post-petition.  The Court held that the IRS was not entitled to exercise the right to setoff against a tax refund in which the Chapter 7 debtor had claimed as an exemption.  However, the Court believes that the *Alexander* Court skipped an analytical step, one that decides the case at bar.

Before a tax refund is property of the estate, and thus can be properly exempted by the debtor under 11 U.S.C. § 522, it is an overpayment.  Under the statutory scheme found in 26 U.S.C. § 6402, the debtor is only entitled to a tax refund to the extent that his or her overpayment exceeds her unpaid governmental liability.  The *Alexander* Court simply assumed that a tax overpayment was property of the estate which a debtor could exempt.

As will be evident from the following discussion, this case is distinguishable from *Alexander* in any event.  The Court need not reach the issue of exemption as the Rileys did not have a tax refund to exempt.  Moreover, *Alexander* involved an offset of tax liability and this case involves an offset of a federal housing agency debt.

II.

The right to setoff permits "entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 19 (1995)(quoting *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913)). The Bankruptcy Code addresses setoff rights in 11 U.S.C. § 553, which provides:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case.

11 U.S.C. § 553. Section 553 does not create a setoff right but rather preserves, with certain exceptions, the right to setoff that a creditor would otherwise have absent bankruptcy. *Strumpf*, 516 U.S. at 18.

To establish a valid right of setoff in bankruptcy, the creditor must establish four conditions: (1) the creditor's claim must arise before the commencement of the case; (2) the creditor must have a debt to the debtor that arose before the commencement of the case; (3) the claim and debt must be mutual; and (4) the claim must be valid and enforceable. 11 U.S.C. § 553; *see also* 5 Collier on Bankruptcy § 553.01[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev.2010). The parties do not dispute that the first three elements are met, as the tax overpayment owed to the Rileys and the Rileys' debt to the USDA RHS are pre-petition, mutual obligations. At issue is whether the setoff is valid and enforceable.

USDA RHS has a legal right to apply a setoff pursuant to 26 U.S.C. § 6402(a), which provides,

> In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d), (e), and (f) refund any balance to such person.

Subsection (d) directs that the Secretary of Treasury to reduce a person's tax overpayment to collect past-due debts owed to another federal agency, such as the USDA RHS. 26 U.S.C. § 6402(d). In sum, the statute authorizes the IRS the Secretary of Treasury to credit an individual's tax overpayment against governmental debts before determining whether a taxpayer is entitled to a refund. *See In re Gould*, 401 B.R. 415, 424 (B.A.P. 9th Cir. 2009).

At this juncture, it is important to appreciate the legal distinction between an "overpayment" and a "refund". An overpayment of taxes is any payment made by the taxpayer that is over and above tax liability. *In re Pettibone Corp.*, 151 B.R. 156, 163 (Bankr. N.D.Ill. 1992). A refund is the amount the IRS is obligated to pay the taxpayer after the IRS has exercised its right to offset pursuant to 26 U.S.C. § 6402. *Id.* "Therefore, an overpayment does not necessarily create a debt due to the taxpayer because that entity has no right to its overpayment until after the IRS has exercised its discretionary powers under 26 U.S.C § 6402(a) and Treas.Reg. § 301.6402–1." *Id.*; *see In re Sissine*, 432 B.R. 870, 882 (Bankr. N.D.Ga. 2010)("A taxpayer's overpayment does not create a right to the funds. Rather, the IRS must first determine that the overpayment should become a refund. Only then does the taxpayer have a right to receive the funds."). Thus, before the IRS exercises its discretion pursuant to 26 U.S.C § 6402(a) and determines the amount of the tax *refund*, the amount is an *overpayment*, which is simply a contingent property right held by the taxpayer.

It is a fundamental principle of bankruptcy law that the debtor may only exempt property of the estate. 11 U.S.C. § 522. "Generally, a debtor's claim to a tax refund is property of the estate."

*In re Abbott*, 2012 WL 2576469, at *2 (Bankr. E.D.N.C. July 3, 2012). "However, the debtor's interest in a refund is contingent upon the statutory determination of what portion of the overpayment remains for the debtor to receive as a refund." *Id.*; *see In re Lyle*, 324 B.R. 128, 131 (Bankr. N.D.Cal. 2005)("[T]he debtor's interest in a *refund* does not necessarily extend to the full value of any *overpayment* of taxes in a given tax year."). In other words, a taxpayer is generally only entitled to a tax refund to the extent that the taxpayer's overpayment exceeds his unpaid governmental debt but where the unpaid governmental debt exceeds the entire tax overpayment, "there is no money left over to become property of the estate." *In re Abbott*, 2012 WL 2576469, at *2. Accordingly, there is nothing for the debtor to claim as exempt. *See In re Bourne*, 262 B.R. 745, 756 (Bankr. E.D.Tenn. 2001)("Once a right of offset preserved by § 553 has been established in a debt owed to the estate, a debtor may claim an exemption only in the balance of the debt turned over to the estate after the offset has been exercised. Thereafter, the exempted property is protected from all other prepetition debts pursuant to 522(c).").

As the Bankruptcy Court notes, the statute makes a distinction between offsetting an overpayment against an unpaid tax liability, *see* §6402(a), and offsetting an overpayment against a debt owed to a different federal agency, *see* §6402(d).[3] It found that once the IRS credits the amount of the overpayment against an existing tax obligation pursuant to § 6402(a), the balance becomes a refund to the taxpayer. Once a refund, it becomes property of the estate that a debtor can

---

[3] 26 U.S.C. § 6402(d)(1) provides in full:

> Upon receiving notice from any Federal agency that a named person owes a past-due legally enforceable debt (other than past-due support subject to the provisions of subsection (c)) to such agency, the Secretary shall (A) reduce the amount of any overpayment payable to such person by the amount of such debt; (B) pay the amount by which such overpayment is reduced under subparagraph (A) to such agency; and (C) notify the person making such overpayment that such overpayment has been reduced by an amount necessary to satisfy such debt.

claim as exempt, but is still subject to other offsets in the remaining provisions of 26 U.S.C. § 6402.[4] Under this analysis, the Rileys were entitled to the full amount of their tax overpayment because they did not have any existing tax liability.  Thus, the $5,140.00 overpayment had become a $5,140.00 tax refund that the Rileys could exempt as  property of the estate.

It is with respect to the latter analysis of 26 U.S.C. § 6402 that this Court respectfully departs from the Bankruptcy Court's order.  As best the Court can discern, an overpayment is subject *not only* to an offset of previous tax liability, 26 U.S.C. § 6402(a), but also to the limitations contained in § 6402(c), (d), (e) or (f).  *See In re Lyle*, 324 B.R. 128 (Bankr. N.D.Cal. 2005); 26 U.S.C.  § 6402(a). Only once the Secretary has applied the limitations in subsections (c), (d), (e) and (f),[5] does the interest in the balance change from an overpayment to a tax refund.  Notably, subsection (d) continues to refer to the balance as an overpayment, not a refund.  *Cf. In re Gould*, 401 B.R. at 424 ("When Congress uses different words in a statute 'it usually means different things.'")(quoting *In re Shaw*, 157 B.R. 151, 153 (B.A.P. 9th Cir. 1993)).

---

[4] The Bankruptcy Court wrote, "The overpayment becomes a refund after tax liability is offset but before other liability is offset.  The debtors have a right to the refund which would be subject to the right of offset by the USDA RHS.  Contrary to the argument of the USDA RHS, the overpayment became a refund prior to any offset against its claim." *In re Riley*, 472 B.R. at 431.

[5] Section 6402(c) contains an analogous limitation to subsection (d), wherein the Secretary must reduce the amount of a person's tax overpayment by the amount of outstanding past-due support.  The Supreme Court in *Sorenson v. Sec'y of the Treasury*, 475 U.S. 851 (1986), considered whether excess earned income credits were overpayments subject to the reduction for past due child support found in § 6402(c).  The Court noted that subsection (c) "directs the Secretary [of the Treasury] to give priority to a State's claim for recoupment of welfare payment . . . over an individual's claim for refund of tax overpayment." *Sorenson*, 475 U.S. at 856.  The Supreme Court appears to classify the balance as an overpayment, which only becomes a refund when the debt delineated in subsection (c) is offset.  Accordingly, "while an interest in a refund of an undetermined amount may arise as of the end of the tax year in which an overpayment has been made, the value of that interest can only be determined following the statutory reductions provided in § 6402." *In re Lyle*, 324 B.R. at 132.  Utilizing the analysis in *Sorenson*, a tax overpayment is a property right contingent upon the limitations delineated in § 6402(a), which directs the Secretary to apply the limitations found in subsections (c), (d), (e), and (f). *See In re Scales*, 476 B.R. 512, 515 (Bankr. N.D.Ohio 2012)(holding that "[d]ebtor . . . failed to set forth any argument as to why the Supreme Court's holding in *Sorenson* would not apply with equal force to the intercept provision" found in subsection (d)).

The Rileys argue that their tax refund was exempt property in Schedule C and therefore not subject to setoff.  They are correct in the assertion that tax refunds are not subject to setoff.  However, they have failed to account for the legal distinction between an "overpayment" and a "refund".  In light of the statutory scheme in § 6402(a) and (d), it is apparent that the Rileys never became entitled to receive any tax refund.  Because the amount of the Riley's obligation to the USDA RHS exceeded the amount of their overpayment, they were not entitled to a refund and accordingly, there was nothing to become property of the estate that could be exempted.[6]

III.

Next, the Court must tackle whether the setoff amount is recoverable under 11 U.S.C. § 553(b)(1), which provides,

> [I]f a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of— (A) 90 days before the date of the filing of the petition; and (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

In sum, a trustee may recover a setoff under 11 U.S.C. § 553(b) if the creditor improved its position within the 90-day period immediately preceding the debtor's bankruptcy petition.  To determine whether § 553(b) is applicable, courts apply the improvement-in-position test:

---

[6] The Bankruptcy Court's decision discusses at length the possible conflict between 11 U.S.C. § 522, which governs exemptions, and 11 U.S.C. § 553, which governs offsets.  This discussion does not seem relevant under the proper analysis.  Because the prior unpaid USDA RHS liability exceeded the amount of the overpayment, the Rileys were not entitled to a refund, and accordingly, the tax refund did not become property of the estate.  As such, it could not be properly exempted by the Rileys under 11 U.S.C § 522.  If there remained a balance after applying the statutory scheme in 26 U.S.C. § 6402, the balance would be a tax refund that the Rileys could claim as exempt.  *See In re Baucom*, 339 B.R. 504, 507 (Bankr. W.D.Mo. 2006)("[N]otwithstanding their apparent conflict, both of these provisions can be reconciled with § 522(c)'s exemption protection language. Once a right of offset preserved by § 553 has been established in a debt owed to the estate, a debtor may claim an exemption only in the balance of the debt turned over to the estate after the offset has been exercised. Thereafter, the exempted property is protected from all other prepetition debts pursuant to § 522(c).").

> First, it is determined what the creditor's "insufficiency" was at the time the setoff occurred. The term "insufficiency" is defined by § 553(b)(2), and means the "amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim." Another simpler way of putting this is to ask by what amount does the creditor's claim against the debtor exceed the debtor's claim against the creditor. For example, if a creditor owes a debtor Five Thousand Dollars ($5,000.00), and the debtor owes the creditor Twenty Thousand Dollars ($20,000.00), then the amount of the creditor's insufficiency is Fifteen Thousand Dollars ($15,000.00). Next it is ascertained what the creditor's insufficiency was on the 90th day immediately prior to the debtor's bankruptcy petition, or if there was no insufficiency on the 90th day immediately preceding the bankruptcy filing, then on the first day in which there was an insufficiency. Finally, a comparison is made between the two figures, and if the insufficiency calculated in the first figure is less than the insufficiency calculated in the second figure, then there exists an impermissible preference, and the creditor must return the difference to the bankruptcy estate.

*In re Rehab Project, Inc.*, 238 B.R. 363, 370-71 (Bankr. N.D.Ohio 1999).

The first step of the formula is to determine what the Rileys' insufficiency was at the time the setoff occurred.  On the date of setoff, May 26, 2011, the USDA RHS has a claim against the Rileys in the amount of $8,534.84 resulting from the foreclosure deficiency.  That same day, the Rileys had a joint tax overpayment of $5,140.00.  Therefore, the insufficiency on the date of setoff was $3,394.84.

The second step of the formula is to determine the insufficiency on the 90th-day immediately prior to the Riley's bankruptcy petition, December 26, 2010.  However, if no insufficiency existed on that date, the insufficiency is determined on the first date during the 90 days preceding the date of the bankruptcy filing on which there is an insufficiency.  On December 26, 2010, the parties did not have a mutual debt, because at that time, the U.S. Treasury did not owe any funds to the Rileys. *See In re Lopes*, 211 B.R. 443, 449 (D.R.I. 1997)("[T]here can be no 'insufficiency', as that term is defined by section § 553(b)(2), unless there are first mutual debts owing between the parties. By

9

Lopes' own admission, on December 12, 1994, the first day of the 90–day prepetition period, the IRS owed her nothing, her tax refund being only an expectancy. As such, at this time, there were no mutual debts owed between the parties and, therefore, no insufficiency."). The insufficiency arose on January 1, 2011, when the IRS became indebted to the Rileys, in the amount of $5.140.00. The USDA RHS still has a claim against the Rileys in the amount of $8,534.84. Therefore, the insufficiency on the date when the mutual debts arose between parties was $3.394.84.

In the present case, there is no improvement in position because the value on the date of offset and the first day on which there is an insufficiency is the same, $3,394.84. There was no change in value between January 1, 2011, the first moment an insufficiency existed, and May 26, 2011, the date when setoff occurred. *See Lopes*, 211 B.R. at 449 ("Section 553(b)(1) does not bar the creation of an insufficiency during the 90–day prepetition period, but instead permits the trustee to recover the setoff amount only if the insufficiency is less at the time of setoff than when it arose."). The USDA RHS did not improve its position pre-petition at the expense of other creditors. There was no impermissible preference for the Rileys to recover because the USDA RHS was legally entitled to setoff the tax overpayment under 11 U.S.C. § 553.

IV.

The Court finds it unnecessary to address the *Alexander* controversy because this instant opinion has proceeded upon a separate analytic path which makes *Alexander* inapplicable. The Bankruptcy Court's decision from June 7, 2012, is hereby reversed. The main issue, whether USDA RHS was authorized to a setoff of the Rileys' 2010 federal income tax overpayment, has been considered by this Court *de novo*, and is decided in favor of USDA RHS. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the judgment of the Bankruptcy Court entered on June 7, 2012, is REVERSED and the Appellants' appeal is SUSTAINED.

IT IS FURTHER ORDERED that this case is REMANDED to the Bankruptcy Court for further proceedings consistent with this opinion.

This is a final order.

cc:     Counsel of Record

         U. S. Bankruptcy Court